**Opinion issued August 6, 2026**



In The

# Court of Appeals

For The

# First District of Texas

_____

**NO. 01-25-00487-CV**
_____

**170 RITTENHOUSE LLC, Appellant**

**V.**

**BOKF NATIONAL ASSOCIATION D/B/A BANK OF TEXAS,**
**Appellee**

---

**On Appeal from the 61st District Court**
**Harris County, Texas**
**Trial Court Case No. 2023-64768A**

---

## O P I N I O N

This breach of contract dispute revolves around the undefined phrase "*'rollback' or similar taxes*." As with many contracts for the sale of realty, the contract here has a proration provision to divide up responsibility for property taxes. The provision states a background rule that largely looks to

who owed what at the time of the closing, but it then qualifies that rule for

"'rollback' or similar taxes" and assigns those to the buyer.

But what do those words mean?  Neither the contract nor the Tax Code

defines "rollback," although it often comes up in connection with land that

loses an agricultural exemption.[1]  As for "similar," the last time the supreme

court faced this word in a writing, it found an ambiguity.  *See ConocoPhillips*

*Co. v. Koopmann*, 547 S.W.3d 858, 875 (Tex. 2018) ("there is more than one

reasonable interpretation of 'other similar payments'").

## Background

The Texas Tax Code provides an exemption for religious organizations

that own land and satisfy one of several conditions.  Section 11.20(a) lists

several such conditions, with the first half a dozen being the following:

> (a) An organization that qualifies as a religious organization as provided by Subsection (c) is entitled to an exemption from taxation of:
>
> > (1) the real property that is owned by the religious organization, is used primarily as a place of regular

---

[1] *See Resol. Tr. Corp. v. Tarrant Cnty. Appraisal Dist.*, 926 S.W.2d 797, 799 (Tex. App.—Fort Worth 1996, no writ); *see also* Tex. Att'y Gen. LO-95-054 (1995) ("When the use of land which has qualified for agricultural appraisal changes, however, an additional, or 'rollback,' tax is imposed in amounts equal to the difference between the taxes paid during the past three or five years—depending on which particular provisions are applicable—and the taxes that would have been due during that time had the land been appraised at market value."); Tex. Att'y Gen. Op. No. JC-0299 (2000) ("The additional tax is a penalty for taking the land out of agricultural production and is referred to as a 'rollback tax' . . . .").

2

religious worship, and is reasonably necessary for engaging in religious worship;

(2) the tangible personal property that is owned by the religious organization and is reasonably necessary for engaging in worship at the place of worship specified in Subdivision (1);

(3) the real property that is owned by the religious organization and is reasonably necessary for use as a residence (but not more than one acre of land for each residence) if the property:

(A) is used exclusively as a residence for those individuals whose principal occupation is to serve in the clergy of the religious organization; and

(B) produces no revenue for the religious organization;

(4) the tangible personal property that is owned by the religious organization and is reasonably necessary for use of the residence specified by Subdivision (3);

(5) the real property owned by the religious organization consisting of:

(A) an incomplete improvement that is under active construction or other physical preparation and that is designed and intended to be used by the religious organization as a place of regular religious worship when complete; and

(B) the land on which the incomplete improvement is located that will be reasonably necessary for the religious organization's use of the improvement as a place of regular religious worship;

(6) the land that the religious organization owns for the purpose of expansion of the religious organization's place of regular religious worship or construction of a new place of regular religious worship if:

3

> (A) the religious organization qualifies other property, including a portion of the same tract or parcel of land, owned by the organization for an exemption under Subdivision (1) or (5); and
>
> (B) the land produces no revenue for the religious organization[.]

TEX. TAX CODE 11.20(a).

Subsections 11.20(a)(1) and 11.20(a)(6) figure in the arguments here. Section 11.20(a)(1) matters because the land belonged to a church until the middle of 2019. Subsection 11.20(a)(6) never applied, as nobody claims that the church owned the land for expansion; but one argument on appeal claims that losing an (a)(6) exemption results in a true rollback tax, whereas losing an (a)(1) exemption does not. *See* TEX. TAX CODE 11.201 (imposing taxes after loss of (a)(6) exemption and calling them "sanctions").

The land in question is located at 170 Rittenhouse Street in Houston. It once belonged to the St. Stephen Missionary Baptist Church. The church owned the land but took out a loan from (and gave a deed of trust to) BOKF. When the church defaulted on the loan, it could not cure, so it conveyed the land to BOKF in a 2019 deed that BOKF recorded in early 2020.

The change in ownership had business consequences as well as tax consequences. First, BOKF started looking for a buyer. Second, the right to

4

the (a)(1) exemption instantly evaporated because the land no longer belonged to a religious organization.

But these consequences took time to play out. BOKF needed until 2021 to find a buyer, and the taxing authorities took even longer to realize that back taxes were owed because of the 2019 lapse in the exemption. In other words, from 2019 to 2021, the land no longer qualified for the (a)(1) exemption, but the authorities treated the tax due as zero until two years after the property had passed to the buyer, at which point a large tax bill suddenly surfaced.

The business side was straightforward. BOKF found a buyer named 170 Rittenhouse. They executed a contract for sale in May 2021 and closed later that year. Their 20-page, single-spaced contract devotes a section to proration of taxes and insurance. Part B of section 5.4 speaks to what it calls "'rollback' or similar taxes." It says:

> 5.4    Adjustments and Prorations.
>
> ***
>
> B.    All non-delinquent real estate and personal property taxes and assessments on the Property will be prorated as of the Proration Date between Seller and Buyer, based upon the actual current tax bill for the tax year in which the Closing occurs. All amounts payable for real estate and personal property taxes and assessments accruing up to and including the Proration Date are the obligation of Seller and all amounts payable for real estate and personal property taxes and assessments accruing after the Proration Date are the obligation of Buyer. At Closing, Seller must pay any real estate and personal property taxes and assessments on the Property that are delinquent as of the Proration Date, if any. If Seller has paid taxes or

5

assessments for the Property in advance, then Seller will be entitled to a credit for all amounts attributable to the period after the Closing Date, to be reflected as a credit on the Closing Statement. **Notwithstanding anything in this Section 5.4 or Contract to the contrary, Buyer, at Buyer's sole cost and expense, shall be responsible for paying, and hereby assumes responsibility and liability for payment of, any and all past, present, or future "rollback" or similar taxes due to change in usage, ownership, and/or classification of the Property (collectively "Rollback Taxes"), and shall indemnify and hold Seller harmless from and against any and all such Rollback Taxes and liability with respect thereto**.

The parties went to closing in 2021, and the title company produced a tidy certificate indicating that the amount of tax on the property was exactly zero. But this happy state of affairs turned dark two years later, when the Harris County taxing authorities sued 170 Rittenhouse for delinquent taxes, in an amount that started at about $119,000 but kept growing by the month.

170 Rittenhouse filed a third-party claim against BOKF for breach of contract, paid off the tax bill ($287,323), and obtained a severance so that it could pursue its contract claim. The contract contains a jury waiver clause, but the case never made it to a bench trial, because both sides filed cross-motions for summary judgment. The trial court granted BOKF's motion and denied 170 Rittenhouse's motion. This appeal followed.

### Analysis

The relevant legal rules are well known. Courts review summary judgments de novo. *Wal-Mart Stores, Inc. v. Xerox State & Loc. Sols., Inc.*,

6

663 S.W.3d 569, 576 (Tex. 2023); *Walker v. Eubanks*, 667 S.W.3d 402, 406 (Tex. App.—Houston [1st Dist.] 2022, no pet.). In reviewing a ruling on a traditional summary judgment motion, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Wal-Mart Stores*, 663 S.W.3d at 576.

The rules of contract construction are equally familiar. First, courts will enforce an unambiguous contract as written, and we do not consider extrinsic evidence bearing on the parties' subjective intent. *U.S. Polyco, Inc. v. Tex. Cent. Bus. Lines Corp*., 681 S.W.3d 383, 387 (Tex. 2023) (per curiam); *Cmty. Health Sys. Pro. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 681 (Tex. 2017).

Second, when construing a contract, we consider the entire agreement and, to the extent possible, harmonize and give effect to all contractual provisions so that none will be rendered meaningless. *Occidental Permian, Ltd. v. Citation 2002 Inv. LLC*, 689 S.W.3d 899, 905 (Tex. 2024). If, after applying the pertinent rules of construction, the contract can be given a definite or certain legal meaning, it is unambiguous, and we construe it as a matter of law. *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (per curiam).

Third, an ambiguity does not arise merely because the parties disagree and advance competing constructions of the contract. *U.S. Polyco*, 681

7

S.W.3d at 389. Instead, a contract is ambiguous if it is "reasonably susceptible to more than one meaning" such that courts cannot give it a certain or definite legal meaning or interpretation. *Scout Energy Mgmt., LLC v. Taylor Props.*, 704 S.W.3d 544, 547–48 (Tex. 2024) (per curiam) (quoting *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)). Whether a contract is ambiguous is a question of law for the court. *Id.*

No one disagrees about any of these familiar legal principles. Instead, the two sides clash over how these principles apply, particularly about how they apply to section 5.4B of the contract.

BOKF sees the proper analysis as focusing on a change in usage or ownership: "170 Rittenhouse relies on a general provision related to the proration of taxes due at closing. BOKF relies on a more specific clause in the provision that makes 170 Rittenhouse responsible for 'past, present, or future' taxes due to a change in use or ownership of the property." To BOKF, "change of use is typically the defining characteristic of rollback taxes."

170 Rittenhouse sees the defining characteristic of a rollback tax being the economic penalty: "The Taxes are not 'rollback' taxes under the Texas Property Tax Code, nor are they 'similar' to 'rollback' taxes. 'Rollback' taxes are imposed by taxing authorities as a penalty for changing the use of property such that a tax exemption is no longer applied. The Taxes here were imposed

8

as a consequence of property ownership in Harris County—not as a penalty for claiming a certain exemption that later failed."

We agree with 170 Rittenhouse about the taxes not being rollback taxes. The loss of the (a)(1) exemption resulted in an additional tax, but not a rollback tax, because a rollback tax entails a penalty for taking the land out of a favored use. Under the basic rule in section 11.43, the loss of an exemption results in recapture of the escaped taxation, but not a penalty. *See* TEX. TAX CODE § 11.43(i).

Such a penalty tax could apply to a religious organization that owned expansion land but then lost its (a)(6) exemption. *See* TEX. TAX CODE § 11.201 (imposing additional taxes and referring to them as "sanctions"); *see also Title Res. Guar. Co. v. Lighthouse Church & Ministries*, 589 S.W.3d 226, 234 (Tex. App.—Houston [1st Dist.] 2019, no pet.).

But that did not happen here. This case involves only the (a)(1) exemption and its lapse. For these reasons, the taxes at hand do not qualify as rollback taxes. This understanding is consistent with a Fort Worth decision where the penalty issue mattered because of federal immunity from penalties: "The 1990 Ag Manual's reference to the rollback tax as a 'penalty' is not contradictory to the statute. Rather, the 'penalty' language in the 1990 Ag Manual is consistent with the wording of the statute that defines the tax as a

'sanction.'" *Resol. Tr. Corp. v. Tarrant Cnty. Appraisal Dist*., 926 S.W.2d 797, 804 (Tex. App.—Fort Worth 1996, no writ). "The statute and the 1990 Ag Manual clearly indicate that the rollback tax is intended to prevent landowners from changing the use of their land with impunity after having benefitted from the open-space land tax provisions." *Id.*

Although the Fort Worth court relied on the 1990 version of the manual from the Comptroller's office, the 2024 version of the manual contains similar language: "Land that receives agricultural appraisal is subject to a tax penalty (rollback tax) when taken out of agricultural use." TEX. COMPTROLLER OF PUB. ACCOUNTS, MANUAL FOR THE APPRAISAL OF AGRICULTURAL LAND 2 (Oct. 2024) (citing TEX. TAX CODE §§ 23.46 and 23.55); *see also* TEX. ADMIN. CODE § 9.4001 (adopting October 2024 manual and directing appraisal districts to use it).[2]  For all these reasons, the taxes at hand do not qualify as rollback taxes.

But are they similar to rollback taxes?  BOKF thinks so.  In its view, similar means nearly corresponding; resembling in many respects; somewhat like; having a general likeness.  *See Guar. Mut. Life Ins. Co. v. Harrison*, 358 S.W.2d 404, 406 (Tex. Civ. App.—Austin 1962, writ ref'd n.r.e.).  BOKF says

---

[2]   This language is also included in the most recent proposed version of the Ag Manual.  *See* TEX. COMPTROLLER OF PUB. ACCOUNTS, MANUAL FOR THE APPRAISAL OF AGRICULTURAL LAND 2 (Jan. 2026).

that "the taxes share every characteristic of a statutory rollback tax save one: the penalty aspect trumpeted by 170 Rittenhouse. Accordingly, the taxes have a 'general likeness' to statutory rollback taxes and share many common features. This is all that is required for them to be similar."

170 Rittenhouse counters that taxes cannot be similar to rollback taxes without a penalty. In its view, the taxes "are not similar to 'rollback' taxes because they are not of the same character as a 'rollback' tax—they are not a penalty or an extra tax that reaches back into a previously exempt time period."

To borrow from the supreme court's phrasing in *Koopmann*, which found a writing ambiguous, "there are both similarities and differences" here. *Koopmann*, 547 S.W.3d at 875. The *Koopmann* court saw "both similarities and differences between shut-in royalties, delay rentals, and paid-up leases, depending on the criteria used to compare them." *Id.* We face a comparable situation. The additional taxes here are similar to rollback taxes because they involve loss of an exemption and a change in ownership, but they are dissimilar because they do not involve a penalty or any apparent public policy aimed at keeping land devoted to a particular use.

In addition to *Koopmann*, courts outside Texas have found ambiguity in contracts that used the term "similar." *See Auto-Owners Ins. Co. v.*

11

*Benjamin*, 781 S.E.2d 137, 143–44 (S.C. Ct. App. 2015) (surveying cases before ultimately reaching the "conclusion that 'similar' is ambiguous"); *McCuen v. Am. Cas. Co. of Reading, Pa.*, 946 F.2d 1401, 1408 (8th Cir. 1991) ("Where several loans are made to a single borrower, for example, losses produced by these loans certainly fit a common definition of 'similar' or 'interrelated.' On the other hand, these words are so elastic, so lacking in concrete content, that they import into the contract, in our opinion, substantial ambiguities.").

For the reasons stated, both parties advance a reasonable interpretation of the contractual language. *See Koopmann*, 547 S.W.3d at 875. Summary judgment is therefore improper, and the intent of the parties must be resolved by the finder of fact.

## Conclusion

We reverse the trial court's order granting final summary judgment in BOKF's favor and remand for further proceedings consistent with this opinion.

David Gunn
Justice

Panel consists of Justices Guerra, Gunn, and Morgan.